UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHANIA W.[1],

                            Plaintiff,

v.                                                            CASE # 1:19-CV-00104

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LAW OFFICES OF KENNETH HILLER          KENNETH HILLER, ESQ.
  Counsel for Plaintiff                              JEANNE MURRAY, ESQ.
6000 North Bailey Ave
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.              JASON P. PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II    JAMES DESIR, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

        The parties consented in accordance with a standing order to proceed before the

undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter

is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant

to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record

and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.     **RELEVANT BACKGROUND**

    A.     **Factual Background**

Plaintiff attained age 18 on July 31, 2013. She has a limited education. (Tr. 18, 83). She was initially on Title XVI childhood disability benefits because of ADHD and conduct disorder. (Tr. 83). She alleges she continued to remain disabled due to depression, anxiety, post-traumatic stress disorder (PTSD), ADHD, oppositional defiant disorder (ODD), bipolar disorder, and borderline personality disorder. (Tr. 83).

    B.     **Procedural History**

Following plaintiff's eighteenth birthday, plaintiff received an Age 18 Redetermination Notice dated March 4, 2014. (Tr. 71). The Redetermination Notice stated plaintiff no longer qualified for Supplemental Security Income (SSI) because she was not found to be disabled under the definition of disability for adults. (*Id.*). On March 31, 2014, plaintiff submitted a request for reconsideration with the SSA. (Tr. 77). Plaintiff had a hearing with a Disability Hearing Officer (DHO) on September 24, 2014, but plaintiff failed to appear for the face-to-face reconsideration hearing. (Tr. 82). The DHO concluded that plaintiff's disability ceased March 4, 2014 and affirmed the prior decision of cessation. (Tr. 79-84).

On October 14, 2014, plaintiff submitted a request for a hearing before an ALJ but subsequently failed to appear for her scheduled hearing. (Tr. 89). Therefore, ALJ Bruce R. Mazzarella issued an Order of Dismissal on May 27, 2015. (Tr. 46-50). On October 6, 2015, the Appeals Council (AC) vacated and remanded the matter back for further proceedings. (Tr. 41-45). Plaintiff did not appear or testify at a hearing held on September 18, 2017 in Buffalo, NY, before

ALJ Stephen Cordovani. (Tr. 27-38). Plaintiff's representative did appear and a Notice to Show Cause was sent to plaintiff, who did not respond. (Tr. 187-189). The ALJ found plaintiff effectively waived an in-person hearing and issued an opinion concluding that plaintiff's disability ended on March 4, 2014, and that plaintiff had not thereafter become disabled. (Tr. 7-26). Plaintiff then filed a civil action directly in this Court seeking judicial review of the Commissioner's decision.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusion of law:

1.    The claimant attained age 18 on July 31, 2013, and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18. The claimant was notified that she was found no longer disabled as of March 4, 2014, based on a redetermination of disability under the rules for adults who file new applications.

2.    The claimant has not engaged in substantial gainful activity since March 4, 2014.

3.    Since March 4, 2014, the claimant has had the following severe impairments: bipolar disorder; post-traumatic stress disorder (PTSD); Learning Disorder; attention deficit hyperactivity disorder (ADHD); marijuana abuse; cocaine abuse (20 CFR 416.920(c)).

4.    Since March 4, 2014, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.902(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that since March 4, 2014, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can understand, remember and carry out simple and routine instructions with tasks. She is able to work in a low stress work environment further reflected by no supervisory duties, no independent decision-making, no strict production quotas or production rate pace, minimal changes in work routine and processes. She can have occasional interaction with supervisors, no or only incidental interaction with coworkers and the public.

6.    The claimant has no past relevant work (20 CFR 416.965).

7.    The claimant was born on August 1, 1995 and is a younger individual age 18-49 (20 CFR 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

9.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

10.   Since March 4, 2014, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

11.   The claimant's disability ended on March 4, 2014, and the claimant has not become disabled again since that date (20 CFR 416.987€ and 416.920(g)).

(Tr. 7-20).


## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff asserts three arguments in support of her motion for judgement on the pleadings. First, she argues the ALJ cherry-picked the opinions of Dr. Ransom and Dr. Tzetzo. Second, the ALJ did not properly weight the opinion of Nurse Practitioner (NP) Frisicaro. Third, the ALJ overstated plaintiff's abilities and mischaracterized the record. (Dkt. No. 7 at 1 [Pl's Mem. of Law]).

### B.    Defendant's Arguments

Plaintiff responded that substantial evidence supports the ALJ's assignment of weight to the medical assessments. (Dkt. No. 15 at 4 [Def's Mem. of Law]).


## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be

reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.     ANALYSIS**

The RFC is an assessment of the most plaintiff can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). Plaintiff argues the ALJ did not properly consider the opinion evidence and overstated plaintiff's abilities and mischaracterized the record. (Dkt. No. 7 at 18). Upon review of the ALJ's decision, the Court finds that the ALJ properly considered the opinion evidence and formulated an RFC based on substantial evidence, including plaintiff's daily activities. (Tr. 12).

Plaintiff first agues the ALJ cherry-picked the opinions of Drs. Ransom and Tzetzo when formulating the RFC. Consultative examiner Dr. Ransom evaluated plaintiff on February 13, 2014 and assessed the following:

> This individual will have mild to moderate difficulty following and understanding simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks. She will have moderate difficulty performing complex tasks, relate adequately with others and appropriately deal with stress due to bipolar disorder currently moderate.
>
> The results of the evaluation are consistent with the claimant's allegations and consistent with moderate psychiatric difficulties, which will moderately interfere with the claimant's ability to function on a daily basis. The results are not consistent with cognitive problems, which would interfere with the claimant's ability to function.

Tr. 460-61 (*repeated at* Tr. 464-65). The ALJ accorded great weight to Dr. Ransom's opinion. (Tr. 18). Plaintiff argues the ALJ cherry-picked the opinion because the RFC did not reflect mild to moderate difficulty following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule and learning simple new tasks. (Dkt. No. 7 at 22-23). As an initial matter, an RFC does not have to mirror the language used by a specific opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)(Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.).

Furthermore, courts have found mild and/or moderate mental limitations are consistent with the ability to perform unskilled work. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)(finding that an RFC determination for unskilled work is not necessarily inconsistent with moderate mental limitations and noting that the Second Circuit has recognized that moderate mental limitations do not prevent a claimant from performing unskilled work); *Whipple v. Astrue*, 479 Fed.Appx. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-

stress environment); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment."). The ALJ's RFC found plaintiff could understand, remember, and carry out simple and routine instructions with tasks. Additionally, he limited plaintiff to a low stress work environment with no supervisory duties, no independent decision-making, no strict production quotas or production rate pace, and minimal changes in work routine and processes. (Tr. 15). ALJ Cordovani appropriately incorporated all the mild and moderate limitations opined by Dr. Ransom into the RFC.

Plaintiff's challenges to the ALJ's assessment of the March 2014 opinion of Dr. Tzetzo are similarly unavailing. Non-examining review physician Dr. Tzetzo stated plaintiff retained the capacity to perform simple tasks with limited contact with coworkers. (Tr. 478). Plaintiff again argues there are "a number of significantly limiting factors" which the ALJ ignored in assessing the RFC despite giving great weight to the opinion. (Dkt. No. 7 at 20). However, plaintiff cites the check-box mental RFC assessment form's summary conclusions as evidence of moderate limitations in various mental activities. (Tr. 480-481). Under the section labeled RFC there is a reference to see a different form, which states "in conclusion, claimant currently appears to retain the capacity to perform simple tasks with limited contact with coworkers." (Tr. 482, 478). In addition to the non-exertional limitations of simple work discussed above, the ALJ also limited plaintiff to occasional interaction with supervisors and no or only incidental interaction with coworkers and the public. (Tr. 15). The RFC is clearly consistent with Dr. Tzetzo's RFC opinion.

Plaintiff asserts the ALJ failed to make specific findings about the nature of plaintiff's stress but plaintiff has failed to explain how the limitations the ALJ assessed do not account for Drs. Ransom and Tzetzo's opinions that plaintiff could appropriately deal with stress with mild to moderate limitations. *See Bartell v. Comm'r of Soc. Sec.*, 2014 WL 4966149, at *3 (N.D.N.Y. 2014)(holding the ALJ adequately factored in limitations in maintaining concentration, persistence and pace and difficulties in dealing with stress by limiting the claimant to simple unskilled work). "[B]asic communication is all that is needed to do unskilled work. The ability to hear and understand simple oral instructions or to communicate simple information is sufficient." SSR 96-9p. In addition, unskilled work ordinarily involves dealing primarily with objects, rather than with data or people. SSR 85-15. Plaintiff references a plethora of case law but no evidence of record to support greater limitations than assessed by the ALJ. (Dkt. No, 7 at 22-23). *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff bears the burden of proving a more restrictive RFC).

Plaintiff next argues the ALJ improperly weighed the opinion of NP Frisicaro. (Dkt. No. 7 at 23). The ALJ thoroughly identified the treatment history, compliance issues and contents of the February 3, 2015 opinion. NP Frisicaro stated plaintiff had marked to extreme limitations and that the limitations would remain despite abstinence from all substance use. (Tr. 17, referencing 646-48). ALJ Cordovani accorded some weight to the opinion. (Tr. 18). As appropriately discussed by the ALJ, NP Frisicaro had a limited treating relationship and relied heavily on plaintiff's self-reported limitations which were inconsistent with plaintiff's activities of socializing with friends, spending time on the internet and Facebook, and attending school. (Tr. 18). The ALJ also acknowledged NP Frisicaro is not an acceptable medical source. (*Id.*). There are five categories of acceptable medical sources and nurse practitioners are not included within those categories. 20 C.F.R. §§ 404.1513(a), 416.913(a). Nurse practitioners are listed among the other medical sources,

whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); s*ee Mongeur v. Heckler,* 722 F.2d 1033, 1039 n. 2 (2d Cir.1983) ("the diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician."). The ALJ explicitly justified why he only gave the opinion some weight and identified the inconsistencies between the opinion and evidence of record. *See* 20 C.F.R. §§ 404.1567(c)(i), 416.927(c)(i); Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

Finally, the ALJ's reference to plaintiff's reported activities was permitted and plaintiff's argument that the ALJ overstated her abilities is unavailing. To be sure, in cases involving primarily mental health issues, whether a plaintiff is disabled often is determined solely based on the plaintiff's reports of subjective symptoms. However, an ALJ may reject plaintiff's subjective allegations in light of inconsistent evidence of daily functional ability. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009). The ALJ's identification of plaintiff's engagement in socializing with friends, spending time on the internet and Facebook, attending a daily GED program, brief employment, taking the bus, living with her boyfriend for a period, shopping online, preparing simple meals, and leaving the house everyday was appropriate in assessing the severity of the alleged impairments. (Tr. 16-18). Plaintiff erroneously argues plaintiff's daily activities do not demonstrate her ability to work; however, the ALJ properly discounted plaintiff's allegations regarding the severity of her symptoms to the extent that they were inconsistent with other evidence. *See Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014). Here, the ALJ cited plaintiff's activities as one factor in the whole

record when assessing the plaintiff's subjective complaints. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Arriving at his decision, the ALJ considered the objective medical evidence, plaintiff's responses to application forms' questions and to providers regarding her activities of daily living and medical treatment received including improvement with treatment compliance. No testimony was considered as the plaintiff effectively waived her right to a hearing by not appearing. (Tr. 7).

While plaintiff may disagree with the ALJ's RFC finding, she failed to show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision.). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise."). In this instance, the Court finds no error.

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is

**GRANTED**.

Dated: July 23, 2021                    *J. Gregory Wehrman*
Rochester, New York                     HON. J. Gregory Wehrman
                                        United States Magistrate Judge